a

FILED

DEC 08 2020 SH

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** **RESPONDENT,** | ) | |
| **v** | ) | **CASE NO. 14-CR-486** |
| **JOHN CHARLES VASTIS,** **DEFENDANT/MOVANT.** | ) | |

---

**Motion For Compassionate Release**
**Pursuant To U.S.C. §3582(c)(2)(A)**

---

Comes now the defendant/movant, John C. Vastis, proceeding on his own behalf pursuant to the statutory amendments of the **First Step Act** (FSA) of 2018, **18 U.S.C. §3582(c)(1)(A)** giving authority to District Courts to modify sentences of imprisonment upon motion of the Defendant and failure to gain a motion by the Bureau of Prisons ("BOP") or lapse of such a motion by the Warden of the Defendant's facility, whichever is earlier. The Defendant is a prisoner at the Federal Correctional Institution at Ashland, Kentucky ("FCI Ashland") On 1 November, 2020, the Defendant submitted through administrative channels a request to the Warden, FCI Ashland, for a motion to the Court a Reduction in Sentence (RIS) based on the compelling and extraordinary circumstances of COVID-19, on the Defendant's behalf pursuant to **18 U.S.C. §3582(c)(1)(A).**

Upon the lapse of 30 days from the date of the denial of Warden H. Allen Beard, Jr., November 2, 2020, Defendant brings this motion to the Court on his own behalf. Due to the complexity of the issues and varying views of the Courts who have previously addressed the intent of Congress upon enactment of the FSA, the Defendant requests appointment of Counsel so that the issues

may be properly presented to the Court.

Defendant's issues presented are the length of sentence served on home confinement (2½ years); his current health conditions and co-morbidity factors; the health status of his wife and dependant; and the inability of Good Time Credits ("GTC") newly awarded by the FSA and to be awarded toward his sentence.

The Defendant's issues meet the provisions under **18 U.S.C. §3553(a)** and **U.S.S.G. §1B1.13** that have guided courts when considering reduction of sentence under **18 U.S.C. §3582(c)(1)(A).** Further, the Defendant is living in a prison with an active breakout of COVID-19 cases among both the staff and inmates. Please expedite this motion.

To this, and in support of the above, the Defendant submits the following:

## Parties And Jurrisdiction

**1.** John C. Vastis is a prisoner serving a 156 month sentence at FCI Ashland. His sentence is the result of his conviction for accessing with intent to view child pornography in the United States District Court for the Northern District of Illinois, Case number: **14-cr-486**.

**2.** H. Allen Beard, Jr., is the Warden of FCI Ashland. Therefore, H. Allen Beard, Jr. is Vastis's custodian and Warden Beard was the proper respondent to the petition for a request for a modification of sentence to the Court.

**3.** On November 2, 2020, Warden Beard denied the request to the Warden, giving as a reason the Defendant did not meet the BOP's requirements under Program Statement 5050.50 for a reduction of sentence. Upon the lapse of 30 days of the denial of the request, Vastis may submit to the Court a Motion For Compassionate Release on his own behalf. Vastis now submits this

this Motion pursuant to **18 U.S.C. §3582(c)(1)(A).** See enclosure: Request To The Warden.

4. Authority to "Modify an imposed term of imprisonment" under **18 U.S.C. §3582(C)(1)(A)** to the "extent otherwise permitted by statute" is provided under **18 U.S.C. 3582(c)(1).** Courts must look to the applicable statute to determine 'the extent' to which modification is expressively permitted by [that] statute."

5. With the enactment of the FSA, Pub. L.115-391, 132 Stat, 5194, two statutes were amended that directly apply to Vastis' 'term of imprisonment' **18 U.S.C. :3582(c)(1)(A)** has been amended to provide defendants an avenue to the courts without a motion by the BOP so long as the defendant has asked the BOP to bring such a Motion and the BOP fails or refuses. **United States v Beck, 2019 U.S. Dist. LEXIS 108452, at *14 (M.D.N.C., June 28, 2019).** Also, **18 U.S.C. §3624(b)** has been amended to award prisoners additional GCT credits that are specifically applied by the provisions of the statute to the prisoner's 'term of imprisonment'. In so doing, the statute limits a District Court's authority in the imposition of a sentence to only the 'sentence imposed.' **FSA §102(b)(1)(A).** Section 102 of the FSA applies "with respect to offense committed before, on or after the date of the enactment of this act, except that such amendments shall not apply with respect to offenses committed before November 1, 1987." FSA, **§102(b)(3).** This Court has jurisdiction over this Motion.

**SUBSEQUENT STATUTORY INTERPRETATIONS**

6. Under Section 603(b) of the FSA - Increasing the Use and Transparency of Compassionate release, **18 U.S.C. §3582(C)(1)(A)** was amemded as follows: (1) In subsection (C)(1)(A), in the matter preceding clause(i), by

inserting after "Bureau of Prisons," the following: "or motion of the Defendant has fully exhausted all administrative rights to appeal a failure of Bureau of Prisons to bring a Motion for the lapse of 30 days from receipt of the Warden of the Defendant's facility, whichever is earlier.

**(FSA-§603(b)**(Emphasis added). The amendment to **18 U.S.C. §3582(c)(1)(A)** emphasized above, has caused courts in review of the new law to question the intent of Congress concerning the authority of BOP in determining compassionate release sentence release requests and the validity of **18 U.S.C. §1B1.13** once a motion is brought to the court.

7. Before the passage of the **FSA**, courts could grant compassionate release sentence reductions only upon a Motion of the BOP Director. However, the BOP rarely did so despite prompting by the U.S. Sentencing Commission. See: U.S. Sentencing Guidelines Manual **§1B1.13** Cmt.N.Y. 2016 and 2018, and also the statement of Michael E. Horowitz, Inspector General, Department of Justice, before the Hearing On Compassionate Release and Conditions of Supervision Before The U.S. Sentencing Commission (2016). ("Until 2013, on average, only [twenty-four] inmates were released each year...that number increased to eighty-three between August 2013 and September 2014") (Emphasis as in original). **United States v Brown, 2019 U.S. Dist. LEXIS 175424, at *8 (S.D.La., Oct 8, 2019).** Referring to the **FSA**, the **Brown** Court commented, ("Since Congress still amended the program following this increase, one can infer Congress thought eighty-three was still insufficient, because rather than "effectively rati[fying] "the BOP's position, Congress sought to overturn it by statute.")

8. With the passage of the **FSA**, courts are now at a divide as to their views on how the new law should be applied. ("...deference to the BOP no longer makes sense now that the **FSA** has reduced the BOP's role...I treat the previous BOP discretion to identify extraordinary and compelling reasons as assigned now to the courts.") **United States v Fox, 2019 U.S. Dist. LEXIS 115388, at *7 (D. Me. July 11, 2019).** In analysis of the divide, **Brown** present the conclusions of those who believed **¶¶§1B1.13** was no longer valid, ("there is no policy statement applicable to motions for compassionate release filed by defendants under the First Step Act..., Courts may, on motions by defendants, consider whether a sentence reduction is warranted for extraordinary and compelling reasons other than those specifically identified in the application notes to policy statements.") See **United States v Beck, 2019 U.S. Dist. LEXIS 108542, at *15-17 M.D. N.C., June 28, 2019)**; See also **United States v Cantu, 2019 U.S. Dist. LEXIS 100923, WL2498923, at *4 (S.D. Tex. June 17, 2019)** ("The policy statement provision that was previously applicable to **U.S.C. §3582(C)(1)(A)** no longer fits with the statute and does not comply with the Congressional mandate that policy statements must provide guidance on the appropriate use of sentence modification provisions under **§3582.**")

9. **Brown** pointed out that while most courts agreed that the new law limits the BOP's authority, some courts still concluded ("...judges may not stray beyond the specific instances in **1B1.13**...") **Id., at *6-7.** ("If the policy statement needs tweaking...that tweaking must be accomplished by the Commission, not by the courts.") See **United States v Lynn, 2019 U.S. Dist. LEXIS 135987, at *10 (S.D. Ala. Aug. 13, 2019); United States v York, 2019 U.S. Dist LEXIS 119768, at *12 (E.D. Tn. July 18, 2018)** ("While that particular policy statement has not yet been updated to reflect that

defendants (and not just the BOP) may move for compassionate release, courts have universally turned to **U.S.S.G. §1B1.13** to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction.")

However, **Brown** took the view of **Cantu**, **Fox** and **Beck** courts in concluding ("...a [the] reading of **§3582(c)**, and the most natural reading of statutory scheme.") **Brown, at *7.**

**10.** After its alalysis of the issues, the **Beck** court found that although **§1b1.13** is no longer in effect it could still be used for guidance in conjunction with **§3553(a)** factors: "...the old policy statement does provide some assistance...for example, the old policy statement requires courts to consider the defendant's dangerousness, **U.S.S.G. §1B1.13(2)**, and that is also part of the **§3553(a)** requirements that courts consider the need to protect the public from further crimes of the defendant. See **18 U.S.C. §3553(a)(2)(c).** Similarly, the old policy statement says that a defendant's medical condition can be an appropriate reason for a sentence reduction. **U.S.S.G. §1B1.13**, application note 1(A), (B), and one of the **§3553(a)** factors is the defendant's need for medical treatment. See **U.S.C. §3553(a)(2)(D).** (**Beck, 2018 U.S. Dist. LEXIS at *17-18.** (Emphasis added). In other words, the **Beck** court used **18 U.S.C. §3553(a)** which is still a valid statute, and referenced **§1B1.13** for guidance to reduce Beck's "term of imprisonment", are found in both **§1B1.13** and §3553(a).
**§3553(a).**

**11.** The DOJ's most recent position on COVID-19 risk factors presents the most compelling and direct language regarding COVID-19 risk factors as extraordinary and compelling reasons for Compassionate Release. On July 28, 2020, the DOJ issues a directive that government shall

concede that an inmate who has one of the risk factors listed by the Center For Disease Control And Prevention ("CDC") for greater risk of severe illness from COVID-19, presents an "extraordinary and compelling reason" warranting eligibility for a compassionate release, even if those risk factors in ordinary, non-COVID-19 times would not. The DOJ's own concession is based on the notion that, while in prison, a defendant cannot socially distance from others, which is something the CDC recommends for people suffering from high blood pressure and heart conditions. See **U.S.S.G. §1B1.13,** comment (N.1.(A)).

## BASIS FOR RELIEF

### Extraordinary and Compelling Reasons

### A. Seriousness of the Offense/Danger to the Community

12. The Defendant recognizes that the most important factors for the Court to consider is whether Vastis would be a danger to the safety of any other person or to the community and whether a modification of the term of imprisonment would still reflect the seriousness of the offense. **U.S.S.G. §1B1.13(2)** and **18 U.S.C. §3553(a)(2).** These concerns were understandably paramount in the District Court's reasoning to impose the sentence that it did. The Court imposed a 156 month sentence and the defendant has served 45 months. He is not asking the Court to address this issue. See **United States v Handerham, 2019 U.S. App. LEXIS 29988, at *4 (3rd. Cir. Oct. 4, 2019)** ("We note, however, that 18 U.S.C. §3582(c)(1)(A) provides a mechanism to seek a reduction in the term of sentence, not to challenge its validity.") But, in requesting the Court to consider a reduction in the "term of imprisonment", Vastis does ~~not~~ ask the Court to consider that an imposed sentence ending after 48 months (plus 30 months of home confinement already served) would have addressed the seriousness of the crime just as

well. The risk that he will repeat the criminal conduct that led to his prison sentence is minimal, and it is further reduced by the supervision he will receive on supervised release. This, Vastis' danger to the community from a sentence reduction is quite low.

13. Another reason a reduction of the 'term of imprisonment', as suggested, satisfies **§1B1.13(2)** and **§3553(a)(2)** is that such a reduction would reflect Vastis's own efforts to rehabilitate. The BOP is presently in the process of implementing the new programs established under the **FSA** under Section 2632 of the Act. The **FSA** directed the Attorney General to create a Risk and Needs Assement System to identify recidivism risks of each inmate and, among other aspects of the section; determine the type and amount of evidence-based recidivism reduction programming needed for each inmate. The BOP created the Prisoner Assessment Tool Targeting Estimated Risks and Needs, or "PATTERN" for short. An initial assessment has been completed for each prisoner and each prisoner has been rated on their risk of recidivism. The initial assessment indicates levels of risk, i.e., minimum, low, medium, and high, based on static factors such as the level of participation in education programs, infractions, and financial responsibility compliance, to name a few. The initial step of the PATTERN program was to give notice to inmates of their recidivism risk level. On December 12, 2019, FCI Ashland provided this notice to the inmates. See provided document, PATTERN ASSESSMENT Recidivism Risk Level Notice. The BOP has found upon review of Vastis' prior criminal history and his service of the 'term of imprisonment' that his recidivism risk level is at 'Minimum.' While Vastis is ineligible for any additional awards due to the category of the crime, the recidivist programs will still be required as part of the PATTERN program that the BOP is currently develping. However, it is

symptomatic of the reason Congress enacted the **FSA** that the BOP would rate an inmate as being minimal risk for recidivism, demonstrating its belief in the inmate's rehabilitation readiness to return to society, and then, when given the opportunity to facilitate this, deny the request because the antiquated guidelines the BOP admitantly adheres to. This Court is not limited in this manner however, and can consider Vastis' recidivism risk level as a factor when making its determination.

14. In and of itself, rehabilitation is not considered an "extraordinary and compelling" reason for the purpose of **U.S.S.G. §1B1.13** - Rehabilitation. But, viewed in light of the seriousness of the offense and the danger to the community, rehabilitation and behavior of the inmate can be telling. ("...to say Defendant has been a model inmate is an understatement. He has not had a single disciplinary incident since entering Federal custody in 2007 in he has exhibited an exemplary rehabilitation record as testament to his positive character and efforts. The Court does not see BOP Progress Reports like this often. One might even call it extraordinary and compelling". Undefined, it made it clear rehabilitation on its own, does not suffice. **§993(F) "Brown, 2019 U.S. Dist. LEXIS at *11-12. See** also **Cantu-Rivera**, ("...the Court also recognizes the extraordinarydegree of rehabilitation Mr. Cantu-Rivera accomplished during the 30 years he has been incarcerated.") **Id., at *4** Vastis has not had a disciplinary incident in the total service of his incarceration - including his 30 months on home confinement. **See** Custody and Rehabilitation documents enclosed. Vastis has completed key recidivist reduction programming, including Drug Education, Victim Impact Panel, Decision Making, Religious Service classes, and various other education programs. Vastis also has had steady employment in food service, education and compound

jobs. Vastis has completed paying all of his financial obligations, including restitution and fees. This further reflects Vastis' commitment of rehabilitation and responsibility.

15. **Extraordinary And Compelling Reasons:**

Vastis suffers from medical conditions; hypertension, ischemea (heart and respiratory condition), and is also overweight. These conditions are key risk factors as reported by the Center for Disease Control and Prevention. As noted earlier, the DOJ has directed because of these conditions alone, that the Government shall concede that these "risk factors" present an "extraordinary and compelling" reason, warranting eligibility for compassionate release. **See United States v Coffman No. 20-5602** (Originating case **No. 5:09-CR-00181-KKC).** (Because...a remand is warranted based on the Government's concession that Coffman has demonstrated extraordinary and compelling reasons under **U.S.S.G. §1B1.13 Comment (n.1.(A)).** We need not decide whether the First Step Act expanded authority of District Courts to consider under subdivision (D) reasons that are neither listed in the policy statement nor determined by the BOP as "extraordinary and compelling".) **See** enclosed medical records for Defendant's medical diagnosis and risk factors. COVID-19 is a virus born disease that attacks the upper respiratory system of its victims. Vastis' ischemea condition has already directly comprimised his ability to breath and this vulnerability, in light of the current outbreak, must be taken seriously. **See** Defendant's medical records.

16. **Additional Extraordinary And Compelling Reasons For Compassionate Release:**

Vastis' spouse, Evelyn Vastis, is currently undergoing treatment for Stage IV fallopian tube cancer as well as other medical conditions.

Her condition has not been responsive to treatment and her prognosis has been stated as "poor" by her physician. **See** enclosed documents: Letter from Evelyn Vastis (11/20/20). Letter from Dr. Vincent Fang ((8/27/20). Letter from Dr. Elena Moore (4/10/20).

Currently, Vastis' mother-in-law, Juanita Nordlund, is suffering from advanced dementia and is a dependant, living in their residence with Evelyn Vastis as her primary care giver. In the even that Evelyn passes away from cancer, the Defendant will assume responsibility for her care. **See** enclosed document: Letter from Dr. Kathryn Singer (9/16/20)

Currently, FCI Ashland is experiencing a COVID-19 outbreak among both inmates and staff. All inmate visitation has been cancelled and it is unlikely, with her current serious medical condition, that the Defendant's spouse could make the eight hour drive when and if visitation is re-opened. Currently (as of December 1st, 2020) the BOP website is reporting 197 inmates and 29 staff members have tested positive for the virus.

**17.** Upon release, Vastis will reside with his wife, Evelyn N. Vastis, in Lakemoor, Illinois at their 31577 N. Pineview Bvld., Lakemoor, IL 60051 address. Vastis will be fully covered for health insurance through the Illinois Teacher Retirement System (T.R.S.) and will receive care through the North Shore University Health System. Vastis and his wife will continue to receive disability pay until Mrs. Vastis reaches the age of 60. At that time, they will begin to receive a monthly pension through the T.R.S.. In the event that Mrs. Vastis should pass away before the age of 60, Vastis will be eligible to receive a survivors pension through T.R.S. for the duration of his lifetime. In addition, Mr. Vasis has funds in an IRA account which he will be eligible to access upon turning 65 years of age. Vastis can also be employed; he holds a Masters degree.

## CONCLUSION

For those extraordinary and compelling reasons that have been presented, the motion for compassionate release/modification of the Term of Imprisonment should be granted with the Defendant/Movant awarded immediate release on the basis of the DOJ's concession and the Defendant's qualified medical conditions.

December 2, 2020

**Date**

**Respectfully Submitted,**

John Charles Vastis

**John Charles Vastis - Pro se**
**FCI Ashland**
**PO Box 6001**
**Ashland, KY 41105**

By signing this Motion, the undersigned is declaring under penalty of perjury that the factual representations presented in the Motion are true and correct to the best of the undersigned's knowledge and belief, and that the documents attached to the Motion, are as they are represented within the motion.

**Executed this date:** December 2, 2020

**Respectfully Submitted,**

John Charles Vastis

**John Charles Vastis - Pro se**
**FCI Ashland**
**PO Box 6001**
**Ashland, KY 41105**

TRULINCS 47503424 - VASTIS, JOHN C - Unit: ASH-E-A

---

FROM: Warden
TO: 47503424 VASTIS, JOHN C
SUBJECT: RE:***Inmate to Staff Message***
DATE: 11/02/2020 12:17 PM

Mr. Vastis,

According to Program Statement 5050.50, Compassionate Release/Reduction in Sentence: Procedures for Implementation, dated January 17, 2019, you have not provided all of the documentation as required in the Program Statement. You have not provided information on where and how you will receive your medical care. You have not provided your release plan. To take care of a spouse or mother in law is not a criteria to apply for compassionate release. Your early release would minimize the severity of your offense as you have only served 33.4% of your sentence which is a sex offense.. Based on all of these factors, your request has been denied.

>>> ~^!"VASTIS, ~^!JOHN C" <47503424@inmatemessage.com> 11/1/2020 10:01 PM >>>
To: Warden Beard
Inmate Work Assignment: Compound 2 pm

11/1/20
Dear Warden Beard,
The purpose of my letter is to formally request that you submit to the director of the B.O.P., on my behalf, that I be granted compassionate release and placed on home confinement to serve out the remainder of my sentence. There are three compelling justifications for my request. I will share those with you now.

The first reason for my request is for the sake of my physical well being during trhis era of the Covid-19 pandemic. One year ago, after testing and consultation with a cardiologist, I was diagnosed with an ischemea. The most obvious symptoms are an inability to acieve deep full breaths, a tendency to become easily winded at even a small amount of exertion, and the feeling at times that my throat is closing up. From what i iunderstand of the Covid-19 virus, these upper respiratory issues, alomg with my chronis hypertension would be greatly magnified if I weere to contract the virus. I fear it could prove to be fatal.

The second and third reasons for my request are centered on the fact that I am needed at home more than ever before to care for both my ailing wife and her 85 year old mother. For over a year now my wife ( a diabetic) has been battling stage 4 Fallopian Tube cancer which has spread to other areas including the lymph nodes. The cancer is fast growing and highly resistant to conventional treatments. The initial chemotherapy and follow up drug treatments have left her in a weakened state suffering from both neuropathy and issues with incontinence. She is in a great deal of pain and is chronically fatigued.

My wife's mother lives with my wife in our home in Illinois. My mother in law has been living with dementia for many years now and as the didease progresses she has continues to need a great deal of care and constant supervision. My wife is simply too sick to do for her mother what she ewas able to do before the onset of her cancer struggle.

As you can see, it a household in crisis. If i were allowed to be placed on home confinement I would be able to to care for these these two good ladies and to assume all of the household chores that neither of them are any longer able to do. Our financial situation is such that there are sufficient funds to cover the expense of my food, housing, and health care needs.
I am asking for a chance to remain virus free and to care for my loved ones in their greatest time of need. Allowing me to be on home confinement would be a true act of compassion. thank you for your consideration of this matter.

John Vastis

PATTERN ASSESSMENT

DATE REVIEWED: 12-19-19

INSTITUTION: ASH UNIT: E/F

INMATE NAME: VASTIS,JOHN REG NO: 47503-424

FIRST STEP ACT (Circle One): ELIGIBLE / INELIGIBLE (circled)

RECIDIVISM RISK LEVEL (Circle One): MINIMUM (circled) LOW MEDIUM HIGH

ASHIF 606.00 * MALE CUSTODY CLASSIFICATION FORM * 11-30-2020
PAGE 001 OF 001 10:11:02

(A) IDENTIFYING DATA

REG NO..: 47503-424 FORM DATE: 06-04-2020 ORG: ASH
NAME....: VASTIS, JOHN C
MGTV: NONE
PUB SFTY: SEX OFFN MVED:

(B) BASE SCORING

DETAINER: (0) NONE SEVERITY.......: (5) HIGH
MOS REL.: 93 CRIM HIST SCORE: (00) 0 POINTS
ESCAPES.: (0) NONE VIOLENCE.......: (0) NONE
VOL SURR: (3) VOL SURR AGE CATEGORY...: (0) 55 AND OVER
EDUC LEV: (0) VERFD HS DEGREE/GED DRUG/ALC ABUSE.: (0) NEVER/>5 YEARS

(C) CUSTODY SCORING

TIME SERVED.....: (4) 26-75% PROG PARTICIPAT: (1) AVERAGE
LIVING SKILLS...: (2) GOOD TYPE DISCIP RPT: (5) NONE
FREQ DISCIP RPT.: (3) NONE FAMILY/COMMUN..: (4) GOOD

--- LEVEL AND CUSTODY SUMMARY ---

| BASE | CUST | VARIANCE | SEC TOTAL | SCORED LEV | MGMT SEC LEVEL | CUSTODY | CONSIDER |
|---|---|---|---|---|---|---|---|
| +2 | +19 | -3 | 0 | LOW | N/A | IN | DECREASE |

G0005 TRANSACTION SUCCESSFULLY COMPLETED - CONTINUE PROCESSING IF DESIRED

# Individualized Needs Plan - Program Review (Inmate Copy)

SEQUENCE: 02041324

Dept. of Justice / Federal Bureau of Prisons

Team Date: 11-26-2020

Plan is for inmate: VASTIS, JOHN C 47503-424

| | | | |
|---|---|---|---|
| Facility: | ASH ASHLAND FCI | Proj. Rel. Date: | 03-18-2028 |
| Name: | VASTIS, JOHN C | Proj. Rel. Mthd: | GCT REL |
| Register No.: | 47503-424 | DNA Status: | ASH04529 / 03-08-2017 |
| Age: | 58 | | |
| Date of Birth: | 10-25-1962 | | |

## Detainers

| Detaining Agency | Remarks |
|---|---|

*NO DETAINER*

## Current Work Assignments

| Facl | Assignment | Description | Start |
|---|---|---|---|
| ASH | COMP 2 PM | CORRIDOR ORDERLY PM | 02-26-2020 |

## Current Education Information

| Facl | Assignment | Description | Start |
|---|---|---|---|
| ASH | ESL HAS | ENGLISH PROFICIENT | 03-29-2017 |
| ASH | GED HAS | COMPLETED GED OR HS DIPLOMA | 03-29-2017 |

## Education Courses

| SubFacl | Action | Description | Start | Stop |
|---|---|---|---|---|
| ASH | C | COLD WAR | 02-18-2020 | 05-09-2020 |
| ASH | C | HISTORY OF BASEBALL | 01-03-2020 | 03-11-2020 |
| ASH | C | HISTORY OF ROCK & ROLL | 07-05-2019 | 09-11-2019 |
| ASH | C | BG.DRAWING MON/THU 1P | 05-14-2019 | 08-01-2019 |
| ASH | C | HEALTH FAIR | 06-26-2019 | 07-18-2019 |
| ASH | C | WORLD WAR II | 03-27-2019 | 06-10-2019 |
| ASH | C | KOREAN WAR | 03-01-2019 | 05-10-2019 |
| ASH | C | US HISTORY I | 02-28-2019 | 05-07-2019 |
| ASH | C | BASIC INVESTING | 02-28-2019 | 05-07-2019 |
| ASH | C | ACE-KEN BURNS THE WEST | 03-01-2019 | 05-07-2019 |
| ASH | C | ACE FCI HISTORY OF AVIATION | 01-31-2019 | 04-09-2019 |
| ASH | C | ANCIENT CIVILIZATIONS | 01-03-2019 | 03-07-2019 |
| ASH | C | WORLD WAR I | 12-28-2018 | 03-05-2019 |
| ASH | C | ACE-CRITICAL DECISION MAKING | 11-26-2018 | 02-13-2019 |
| ASH | C | STUDY OF STARS LIFE AND DEATH | 11-29-2018 | 02-08-2019 |
| ASH | C | HISTORY OF THE CIVIL WAR | 11-29-2018 | 02-07-2019 |
| ASH | C | ACE-K.BURNS-NATIONAL PARKS VID | 11-02-2018 | 01-08-2019 |
| ASH | C | AMERICAN EXPERIENCE: NEW YORK | 10-07-2018 | 12-18-2018 |
| ASH | C | HEALTH FAIR | 06-12-2018 | 08-28-2018 |
| ASH | C | KEYBOARDING IN VOC. TRAINING | 01-23-2018 | 05-15-2018 |
| ASH | C | VICTIM IMPACT PANEL | 04-02-2018 | 04-04-2018 |
| ASH | C | ACE-SHAKESPEARE ON FILM | 01-04-2018 | 03-21-2018 |
| ASH | C | EXPOSURE TO CLASSIC CINEMA | 11-03-2017 | 01-11-2018 |
| ASH | C | HISTORY OF ANCIENT GREECE | 07-11-2017 | 09-06-2017 |
| ASH | C | A&O WELLNESS AT RISK | 04-01-2017 | 04-07-2017 |

## Discipline History (Last 6 months)

| Hearing Date | Prohibited Acts |
|---|---|

*** NO INCIDENT REPORTS FOUND IN LAST 6 MONTHS ***

## Current Care Assignments

| Assignment | Description | Start |
|---|---|---|
| CARE1-MH | CARE1-MENTAL HEALTH | 03-07-2017 |
| CARE2 | STABLE, CHRONIC CARE | 05-17-2017 |

## Current Medical Duty Status Assignments

| Assignment | Description | Start |
|---|---|---|
| LOWER BUNK | LOWER BUNK REQUIRED | 02-20-2019 |

# Individualized Needs Plan - Program Review (Inmate Copy)

SEQUENCE: 02041324

Dept. of Justice / Federal Bureau of Prisons

Team Date: 11-26-2020

Plan is for inmate: VASTIS, JOHN C 47503-424

| Assignment | Description | Start |
|---|---|---|
| REG DUTY | NO MEDICAL RESTR--REGULAR DUTY | 03-16-2017 |
| YES F/S | CLEARED FOR FOOD SERVICE | 03-16-2017 |

## Current Drug Assignments

| Assignment | Description | Start |
|---|---|---|
| DAP NO INT | DRUG ABUSE PROGRAM NO INTEREST | 09-14-2017 |
| ED COMP | DRUG EDUCATION COMPLETE | 03-20-2018 |

## FRP Details

Most Recent Payment Plan

**FRP Assignment:** **COMPLT** **FINANC RESP-COMPLETED** **Start: 04-24-2017**

Inmate Decision: **AGREED** **$25.00** Frequency: **QUARTERLY**

Payments past 6 months: **$0.00** Obligation Balance: **$0.00**

### Financial Obligations

| No. | Type | Amount | Balance | Payable | Status |
|---|---|---|---|---|---|
| 1 | ASSMT | $100.00 | $0.00 | IMMEDIATE | COMPLETEDZ |
| | | *** NO ADJUSTMENTS MADE IN LAST 6 MONTHS *** | | | |
| 2 | REST FV | $18,856.32 | $0.00 | IMMEDIATE | COMPLETEDZ |
| | | *** NO ADJUSTMENTS MADE IN LAST 6 MONTHS *** | | | |

### Payment Details

Trust Fund Deposits - Past 6 months: $1,000.00 Payments commensurate ? Y

New Payment Plan: ** No data **

## Progress since last review

Inmate Vastis has not completed any programming since last review, likely due to COVID restrictions. He now has $1,000 in his Inmate Pre-Release Encumbrance account. Vastis states he has submitted a request for enrollment in Cage Your Rage.

## Next Program Review Goals

Continue to recommend you enroll in, and complete, Introduction to the Stock Market prior to your next review. Submit a copout to the Education Department requesting enrollment. Recommend enrollment into the parenting programming, submit a request to the Education department requesting enrollment.

## Long Term Goals

Recommend you continue to contribute to your Inmate Pre-Release Encumbrance account and accumulate an account balance of $1500.00 prior to June 2023 to assist with your release needs. Recommend you complete a resume prior to April 2021. Consult with the Education Department regarding materials to complete your resume.

## RRC/HC Placement

No.
Management decision - Will review 17-19 months prior to relase..

## Comments

History of Bankruptcy (Unknown)
Bank account (Unknown)
Assets or liabilities (Unknown)
Debts noted in Credit Report or other sources (Unknown)
Tax Liabilities/back taxes (Unknown)
Unpaid alimony/child support (Unknown)
Other indications of lack of financial management skills (Unknown)

# FCI ASHLAND

## Religious Services

THIS CERTIFIES THAT

John Vastis 47503-424

Has completed the "Bondage Breaker" Re-Entry Class

Approved by FCI Ashland Religious Services and therefore awarded this

**CERTIFICATE given this 28th day of September, 2018**

[signature]

Supervisory Chaplain

# FCI ASHLAND

## Religious Services

THIS CERTIFIES THAT

John Vastis, 47503-424

Has completed the "Moving Mountains" Re-Entry Class

Approved by FCI Ashland Religious Services and therefore awarded this

**CERTIFICATE given this 19th day of June, 2018**

Supervisory Chaplain

# Certificate of Completion

Presented to

## John Vastis

Who is hereby awarded this certificate for the completion of

## Keyboarding

Ashland FCI

**Ashland, Kentucky 41105**

**Computer**

**Lab**

1-29-18

*Date*

C. Caudill, Ed

*C. Caudill, Education Specialist*

# *Certificate of Achievement*

Awarded to:

## JOHN VASTIS

Completion of FCI Ashland's ACE Program

DECISION

*January 25, 2019*

*Date*

*Signed* ***D. Russell Teacher***

VASTIS 47503-424 E02-013L

# FCI ASHLAND

presents

## John Vastis

*Certification of appreciation for outstanding service and diligence as a Clerk in the Education Department.*

*Given at FCI Ashland, this twenty-sixth day of September, 2017*

[signature]

C. Webb, SOE

November 20, 2020

To whom it may concern,

My name is Evelyn Vastis and I am married to John Vastis, an inmate at the Ashland FCC. I have Stage 4b Metastatic Fallopian tube/ovarian and Mesentery membrane cancers. My mom, Juanita Nordlund, 85, moved into our house 3 years ago, which made it easier to care for her. She has dementia with paranoia and Crohn's disease. Juanita needs 24 hour supervision. Her memory is extremely disabled. She has several symptoms that are typical for dementia patients. I am her guardian and 24 hour caregiver.

In June of 2019, I was diagnosed with a benign tumor in my abdomen on my right Fallopian tube. From June to December, I made several visits to Immediate Care, Emergency rooms, PCP visits and several types of Radiological scans. My Gynecologist decided to remove the tumor and I had a hysterectomy on December 13, 2019.
The pathology report came back and everything was malignant. The ascites, the Mesentery Membrane, the Tumor (which engulfed my rt. Ovary) were removed and/or biopsied. I was referred to the Kellogg Cancer Clinic.

I was told by the Oncologist that I also had a malignancy near my heart and one near my liver. Chemo was rough on my digestive system and as treatments continued off and on until June, I had 4 hospital stays because of my symptoms, pain, nausea, vomiting, diarrhea , incontinence, and I developed orthostatic hypotension and Neuropathy.

My Oncologist has told me that I would not go into remission and therefore I will not be cured. Unfortunately my life expectancy has been considerably shortened, my prognosis is poor. On a daily basis I have neuropathy pain, urinary and bowel incontinence, fatigue, orthostatic hypotension, diabetes, frequent UTI's, abdominal pains, nausea and vomiting, frequent bouts of Cdiff and my abdomen needs to be drained every two weeks.

I am worried that as I need more care for myself I won't be able to provide care for my Mom. For the reasons stated above, please consider giving John Vastis a compassionate release.

Thank you for your consideration,

E. Vastis

Evelyn Vastis

NorthShore
University HealthSystem
Medical Group

Vernon Hills Internal Medicine

225 N. Milwaukee Ave.
Vernon Hills, Illinois 60061
www.northshore.org

Phone (847) 941-7600
Fax (847) 941-7698 fax

August 27, 2020

Re: Evelyn Vastis
DOB: 3/19/1963

To whom it may concern:

I am Evelyn Vastis' primary care physician. Evelyn Vastis is a patient that is currently under Dr. Moore and my care. Ms. Vastis has been diagnosed with a stage IVB fallopian tube cancer. She is currently receiving chemotherapy treatments for this. The treatments cause multiple complications and side effects. She has also been hospitalized for infection while on treatment. Her prognosis is poor and she is current unable to work in any form or fashion. If you have any questions please contact me.

Sincerely,

VINCENT FANG, MD

**NorthShore**
University HealthSystem

**Medical Group**

**Division of Gynecologic Oncology**
Department of Obstetrics and Gynecology

2650 Ridge Avenue, Walgreen Building
Suite 1507
Evanston, IL 60201
www.northshore.org

Phone (847) 570-2639
Fax (847) 733-5618

04/10/20

To Whom It May Concern

Evelyn Vastis is a patient that is currently under my care. Ms. Vastis has been diagnosed with a stage IVB fallopian tube cancer. She is currently receiving chemotherapy treatments for this. Her condition is also complicated by her numerous co-morbidities including diabetes, hypertension, recurrent urinary tract infections, and history of severe c difficile infection. She has also been hospitalized for infection while on treatment. Her recent CT scan did not show as much improvement as hoped for and, therefore, curative surgery was not an option and her prognosis is now poor.

If you have any questions, please feel free to contact my office.

Sincerely

Elena Moore, MD
NorthShore University HealthSystem
Division of Gynecologic Oncology

SAMARITAN COUNSELING CENTER
HOPE, HELP AND HEALING

September 16, 2020

To Whom It May Concern,

Juanita Nordlund (DOB: 7/30/35) is a patient under my care. Juanita is diagnosed with generalized anxiety and dementia. If you have further questions, I can be reached at (847)382-4673. Thank you.

Sincerely,

Kathryn Singer MD
Psychiatry

John Vastis
47503-424
Federal Correctional Institution
P.O. Box 6001
Ashland, KY 41105




Charleston P&DC 25
WED 02 DEC 2020

RECEIVED
DEC 08 2020
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

U.S.C.A. – 7th Circuit
RECEIVED
DEC 08 2020 SK

United States District Court in the 7th Circuit
Northern District of Illinois
Everett McKinley Dirksen United States Courthouse
20th Floor
Clerk of Court
219 South Dearborn Street
Chicago, IL 60604